**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LISA G.,

                              Plaintiff,

          v.                                                5:22-CV-552
                                                              (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                                **OF COUNSEL:**

OSTERHOUT BERGER DISABILITY LAW   HANNALORE MERRITT, ESQ.
Attorney for Plaintiff
521 Cedar Way
Suite 200
Oakmont, Pennsylvania 15139

U.S. SOCIAL SECURITY ADMIN.            GEOFFREY M. PETERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION AND ORDER[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 7 & General Order 18.

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 9, 11, & 14.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied.  The Commissioner's decision is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1966.  Dkt. No. 8, Admin. Tr. ("Tr."), p. 453.  Plaintiff reported that she completed high school.  Tr. at p. 458.  She has past work experience in the food service industry.  Tr. at p. 459.  Plaintiff alleges disability due to mixed connective tissue disease, osteoarthritis, Raynaud's syndrome, livedo reticularis, post-traumatic stress disorder, anxiety, depression, aneurysm, Epstein-Barr virus and pulmonary mycosis.  Tr. at p. 457.

### B.  Procedural History

Plaintiff applied for disability insurance benefits, as well as supplemental security income, in June 2019.  Tr. at pp. 357-368.  She alleged a disability onset date of June 3, 2013.  Tr. at p. 453.  Plaintiff's application was initially denied on October 21, 2019 and upon reconsideration on December 26, 2019, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 179-198 & 202-227.  Plaintiff subsequently appeared and testified at a hearing before ALJ Robyn Hoffman on June 12, 2020.  Tr. at pp. 61-86 & 226-227.  At that hearing Plaintiff amended her disability

onset date to October 26, 2015. Tr. at p. 66. On July 22, 2020, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 143-166. Plaintiff appealed and the matter was remanded by the Appeals Council to the ALJ for further proceedings. Tr. at pp. 167-171.

On April 9, 2021, the ALJ had a new hearing at which Plaintiff again testified. Tr. at pp. 44-60. On August 23, 2021, the ALJ issued a new decision, again finding Plaintiff not disabled. Tr. at pp. 15-36. On April 1, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-5.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2016. Tr. at p. 19. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 26, 2015, the amended onset date. *Id.* Third, the ALJ found that Plaintiff had the following severe impairments: undifferentiated connective tissue disease with positive ANA and Raynaud's phenomenon, degenerative disc disease of the cervical spine, arthritis of bilateral hands and pulmonary mycosis. *Id.* Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr.

at p. 22.  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC")

to perform "a range of light work" with the following additional limitations:

> the claimant can occasionally lift and carry twenty pounds; frequently lift
> and carry ten pounds; sit for up to six hours; and stand and/or walk for six
> hours, all in an eight-hour workday with normal breaks. She can frequently
> climb ramps or stairs and she can perform frequent stooping, kneeling,
> crouching, and crawling. The claimant can occasionally climb ladders, ropes,
> or scaffolds. The claimant should not perform more than occasional fine
> manipulation such as repetitive hand-finger actions, fingering or feeling with
> bilateral hands. But she retains the ability to grasp, hold, turn, raise, and lower
> objects with either hand. The claimant should avoid exposure to excessive
> amounts of respiratory irritants such as dust, odors, fumes, and gases and
> extreme cold temperatures.

Tr. at p. 22.

Next, relying on certain Social Security Administration policies, the ALJ

concluded that consideration of Plaintiff's past work would have "no effect on the

ultimate finding of disability" and so proceeded directly to step five of the sequential

analysis.  Tr. at p. 34.  Finally, relying on the Medical-Vocational Guidelines ("the

Grids"), the ALJ found that Plaintiff was not disabled.  Tr. at pp. 35-36.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's

determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986

(2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably

have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

Plaintiff seeks review in this Court on two grounds. First, she alleges the ALJ erred in relying solely on the medical-vocational grids to reach a finding that Plaintiff was not disabled. Dkt. No. 9, Pl.'s Mem. of Law at pp. 4-7. Second, she argues that the ALJ erred by omitting any mental limitations in the RFC. *Id.* at pp. 8-11. In response, Defendant asserts that the ALJ properly evaluated the record and that the analysis and ultimate decision were both supported by substantial evidence. Dkt. No. 11, Def.'s Mem. of Law at pp. 3-14.

### A. The ALJ's Reliance on the Grids

> In meeting her burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid". The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

*Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

Reliance on the Grids is typically appropriate "if a claimant suffers solely from exertional impairments." *Lee v. Colvin*, 2016 WL 11477515, at *10 (N.D.N.Y. June 1, 2016), *report and recommendation adopted*, 2016 WL 4029252 (N.D.N.Y. July 27, 2016). In addition, "where the claimant's work capacity is significantly diminished

beyond that caused by his exertional impairment the application of the grids is inappropriate. By the use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).  The Second Circuit has further explained that "the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a negligible impact on a claimant's ability to perform the full range of work."  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (internal quotation omitted).

Despite the detailed analysis of the ALJ, the Court is constrained to direct a remand for further proceedings.

The RFC did not indicate Plaintiff could perform a full range of light work and imposed certain postural limitations and also limited Plaintiff's environmental exposures.  Tr. at p. 22.  Postural  and environmental "precautions are non-exertional limitations." *Masoud v. Saul*, 448 F. Supp. 3d 147, 159 (D. Conn. 2020).  The ALJ also found that Plaintiff "should not perform more than occasional fine manipulation such as repetitive hand-finger actions, fingering or feeling with bilateral hands.  Tr. at p. 22.

The ALJ reached the conclusion to rely on Grids after making three separate independent conclusions about the effect of particular limitations.  The ALJ found:

> Specifically, the claimant's postural restrictions provide that she can frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and can perform frequent stooping, kneeling, crouching, and

crawling. Such limitations do not ordinarily have a significant impact on the broad world of work (SSR 83-10; 83-14; and 85-15), thus I conclude that the claimant's postural restrictions have very little impact on the size of the remaining occupational base for unskilled light work. Furthermore, where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc. (SSR 85-15).

Lastly, with regard to the limitations regarding claimant's manipulative abilities, pursuant to Social Security Ruling 83-10, most unskilled light jobs require the use of an individual's arms and hands to grasp, hold, and turn objects, but generally do not require the use of the fingers for fine activities to the extent required for sedentary work (SSR 83-14; SSR 83-10). Additionally, the ability to feel the size, shape, temperature, or texture of an object by use of the fingertips is a function required in very few jobs (SSR 85-15). According, the claimant's manipulative limitations would not significantly erode the occupational base for light work (SSR 85-15).

Tr. at pp. 35-36.

"An ALJ must make a specific finding on the significance of the nonexertional impairment, and adequately explain that finding on the record, to determine whether he or she must consider testimony from a vocational expert." *Mattioli v. Commissioner*, 2015 WL 4751046, at *4 (D. Conn. Aug. 11, 2015). However, in reaching disability determinations, the Commissioner must also consider the combined effect of all a claimant's impairments. *Burgin v. Astrue*, 348 F. App'x 646, 647 (2d Cir. 2009). The ALJ's analysis of these individual restrictions, which the Court assumes was proper under applicable guidelines, does not appear to have considered what combined impact, if any, they would have had on Plaintiff's vocational opportunities. The ALJ identified three distinct limitations that reduced, though not significantly in her view, Plaintiff's

occupational work base.  The decision under review, however, does not appear to have explicitly addressed what, if any, combined effect those restrictions may have had on Plaintiff's vocational capacity.  That was error.  *DeLeon v. Colvin*, 2016 WL 3211419, at *5 (D. Conn. June 9, 2016).

Part of a vocational expert's role "is to assess the effect of any limitation on the range of work at issue (e.g., the potential occupational base)."  *Vandermark v. Colvin*, 2015 WL 1097391, at *9 (N.D.N.Y. Mar. 11, 2015) (citation omitted).  Here, the extent of the diminution in Plaintiff's ability to work by the postural restrictions, environmental restrictions, and Plaintiff's manipulative abilities are key to the propriety of the reliance on the Grids.  If they had no more than a negligible effect on Plaintiff's ability to work, the ALJ could properly rely on the Grids.  If the effect was greater, however, that sole reliance was not proper.  In the Court's view, a vocational expert was in the best position in the first instance to make that determination.  "Considering the medical evidence of [Plaintiff's] nonexertional impairments . . . the Court finds that the ALJ should not have relied solely on the grids to determine whether [Plaintiff] was disabled, and should have consulted the expertise of a VE before making that determination."  *Santana v. Kijakazi*, 2022 WL 19560948, at *21 (S.D.N.Y. July 29, 2022), *report and recommendation adopted*, 2023 WL 3004969 (S.D.N.Y. Jan. 23, 2023); *see also Wojcik v. Colvin*, 2016 WL 6775301, at *2 (W.D.N.Y. Nov. 16, 2016) (citing *Bapp v. Bowen*, 802 F.2d at 605-06).

Accordingly, the matter is remanded for further consideration.

### B. Findings Regarding Mental Limitations

The ALJ found Plaintiff to have "mild" limitations in each of the four areas of mental functioning considered as part of the paragraph B criteria. Tr. at pp. 20-21. In light of that finding Plaintiff contends that the ALJ erred in not including some form of mental restrictions in the RFC. Pl.'s Mem. of Law at pp. 10-11. The Court finds no error with the ALJ's finding in this regard.

In assessing the RFC, the law requires an ALJ to consider even impairments that result in only mild restrictions. *Dorcas M.L. v. Comm'r of Soc. Sec.*, 2022 WL 580448, at *4 (N.D.N.Y. Feb. 25, 2022). The presence of mild limitations, however, do not require that mental restrictions be incorporated into the RFC. *James N. v. Comm'r of Soc. Sec.*, 2023 WL 2179451, at *4 (W.D.N.Y. Feb. 23, 2023) (citing cases); *Katherine R. v. Comm'r of Soc. Sec.*, 2021 WL 5596416, at *7 (W.D.N.Y. Nov. 30, 2021). The record is clear that the ALJ considered Plaintiff's various medical impairments, both severe and non-severe, in painstaking detail. Tr. at pp. 22-34. That included specific consideration of mental limitations. Tr. at 23-24 & 33. Significantly, Plaintiff does not challenge the ALJ's conclusions regarding the substance of these findings. "The fact that the ALJ ultimately did not incorporate any limitations into the RFC to accommodate these mild limitations is not error where, as here, it is clear from [her] analysis that the ALJ considered these mild mental limitations but declined to adopt them." *Kiyantae N. v. Comm'r of Soc. Sec.*, 2022 WL 2758309, at *5 (W.D.N.Y. July 14, 2022).

11

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REMANDED pursuant to sentence four** for further proceedings; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: June 26, 2023
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge